UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-363-GWU

RICKEY NEAL,                                                                                              PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Neal

      Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520©), 404.1521, 416.920©), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Neal

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Neal

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Neal

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Neal

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ricky Neal, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of a cervical strain, a depressive disorder, being status post left scapula fracture, and status post compression fracture of the thoracic spine.  (Tr. 17).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Neal retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 19-24).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 39, eleventh grade education, and work experience as an equipment operator could perform any jobs if he were capable of "light" level exertion, with a sit/stand option at intervals of 30 to 60 minutes, could occasionally bend, and was restricted to simple, routine tasks due to diminished focus and

concentration, in a low stress work environment requiring little interaction with the general public and coworkers. (Tr. 445). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mr. Neal alleged disability due to pain in his back and shoulder following an accident in August, 2002, in which his truck rolled over. (Tr. 107, 427-8). He had also developed problems with gout, diabetes, and headaches, as well as depression and anxiety. (Tr. 429). Several years before his accident, he had undergone bilateral carpal tunnel release surgery and still had problems with the right hand, although the left was much better. (Tr. 430).

The ALJ stated that he accepted functional restrictions given by Dr. Terry Troutt, one of the plaintiff's treating physicians. Dr. Troutt began treatment of Mr. Neal in January, 1999, initially for evaluation of his carpal tunnel syndrome. (Tr. 162). He also treated the plaintiff extensively in 2002 and 2003 for the problems related to his truck rollover which included a fracture of the left shoulder blade, a compression fracture of the T7 and T8 vertebrae, left shoulder girdle pain and pain in the neck as well as numbness in the hands. (E.g., Tr. 158). He prescribed physical therapy and the plaintiff was returned to work as of January 10, 2003. (Tr.

144). Dr. Troutt assigned functional restrictions on several occasions during his treatment, which ended in May, 2003, consisting of no lifting, pushing or pulling greater than 20 pounds, no repetitive lifting from ground level, and no repetitive bending. (Tr. 161).

The ALJ correctly noted that Dr. Ben Kibler, another treating source, referred to a restriction of lifting no more than 10 pounds and an inability to tolerate overhead pushing and pulling. (Tr. 211). However, this appears to be a restriction given by some other source and not Dr. Kibler's opinion. The ALJ rejected the opinions of one-time examiners Dr. Mark Burns and Dr. James Owen. (Tr. 21). Dr. Burns essentially opined that the plaintiff would have no restrictions (Tr. 221-5), while Dr. Owen opined that he would be incapable of performing even sedentary level exertion (Tr. 383-7). Since both of these sources were one-time examiners, the ALJ could reasonably have chosen to rely on the opinion of a treating source.

The ALJ also rejected the opinion of another treating source, Dr. George Chaney. Dr. Chaney treated the plaintiff between approximately mid-2003 and 2006, although his most recent office note is dated February, 2005. (Tr. 295-343). Dr. Chaney treated the plaintiff for a variety of conditions, but noted in a December, 2003 examination for complaints of low back and thoracic pain that Mr. Neal was in no apparent distress, had a normal gait, could squat and rise and perform toe and heel walking, and had normal reflexes and sensation. (Tr. 336-7). One positive

Neal

finding was a "moderate amount" of spasms in the back. (Tr. 336). Although Dr. Chaney stated that Mr. Neal was unable to work until he was cleared by Dr. Kibler (Tr. 337), Dr. Kibler's notes from 2003 and 2004 do not indicate that the plaintiff was unable to work. (Tr. 202-8). Another examination in August, 2004 for low back pain was also largely negative except for a finding of lumbar tenderness (Tr. 321-2). However, Dr. Chaney did prescribe the medication Vicodin along with heat and physical therapy. (Tr. 322). In February, 2005, Dr. Chaney diagnosed an acute case of gout, after the plaintiff complained of left ankle pain and swelling for three to five days. (Tr. 295).

Almost a year later, on January 25, 2006, Dr. Chaney completed residual functional capacity and medical assessment forms indicating that he had diagnosed Mr. Neal with "moderate" lumbar disc disease, a torn rotator cuff, carpal tunnel syndrome, and anxiety and depression. (Tr. 399, 405). He felt that the plaintiff could lift 20 pounds occasionally and 10 pounds frequently, but could not perform full-time standing, walking and sitting and needed restrictions on all postural activities, handling, feeling, pushing, pulling, working around heights, moving machinery, temperature extremes, humidity and vibration, as well as uneven terrain and dampness. (Tr. 401-3, 405-6). The ALJ noted that, while he accepted the lifting and carrying restrictions, Dr. Chaney's other restrictions were not well supported by his "vague" treatment notes with few corroborating medical signs. (Tr. 22). He also felt

Neal

that they were inconsistent with the claimant's testimony, which included an admission that he had undertaken a three to four hour drive, with approximately four breaks. (Tr. 438).

Whatever may be said about the plaintiff's testimony, which also included statements that were consistent with Dr. Chaney's restrictions (Tr. 436-7), the Court agrees with the ALJ that Dr. Chaney's notes provide little objective evidence for the level of restrictions provided. In addition to the relative paucity of the physician's physical findings, other objective testing contained in the transcript is not particularly impressive. An x-ray of the cervical spine in November, 2002, showed only mild degenerative spurs, an MRI of the lumbosacral spine in September, 2003 was described as being normal apart from "very minimal" degenerative changes at one level, and an MRI of the thoracic spine in the same month was "unremarkable." (Tr. 172, 200-1). Also, despite Dr. Chaney's diagnosis of a rotator cuff tear, an MRI in November, 2002 showed no evidence of a rotator cuff tear. (Tr. 248). Subsequently, a CT scan of the thoracic spine in July, 2004 did show some degenerative changes and "minimal compression" of T-11. (Tr. 287). Taken as a whole, however, the evidence would support the fact finder in his conclusion that Dr. Chaney's opinions were not well supported, and in addition, the plaintiff does not specifically raise the issue of Dr. Chaney in his brief.

Neal

The plaintiff's main argument regarding his physical restrictions is that the hypothetical question did not include Dr. Troutt's limitations on no lifting "from ground level" and no repetitive bending and twisting (Tr. 161). The form signed by Dr. Troutt did state that Mr. Neal should do no "repetitive" bending, which is consistent with a restriction to "occasional" bending as given in the hypothetical question. (Id.). The form may have said that there was also a restriction on twisting, but this is not legible in the photocopy contained in the Court transcript. Moreover, the jobs identified by the VE such as assembler and hand packer are not facially inconsistent with Dr. Troutt's restrictions. (Tr. 445).[1]

Turning to the plaintiff's complaints of anxiety and depression, he underwent a psychological evaluation by Dr. Christopher Catt in March, 2004. Mr. Neal stated that he was supposed to be taking the antidepressant Paxil, but could not afford the medication. (Tr. 216). He gave a history of having been psychiatrically hospitalized in 2001 for severe anxiety, apparently connected with an episode of drinking. (Tr. 217). Currently, he complained of poor sleep, and objective testing showed "moderate" anxiety, but the psychologist diagnosed moderate major depressive disorder with atypical features. (Tr. 218-19). He assigned a Global Assessment of Functioning (GAF) score of 50, reflecting serious symptoms per the Diagnostic and

---

[1] See, e.g., the following sections of the Dictionary of Occupational Titles (DOT): 559.687-074, Inspector and Hand Packager, 723.684-014, Assembler I, and 729.687-010, Assembler, Electrical Accessories I.

Statistical Manual of Mental Disorders (4th Ed.) p. 34.  In terms of restrictions, it was suggested that the plaintiff's ability to sustain attention and concentration would be "variable," and he should be restricted to low levels of stress only.  (Tr. 219).  He would also have a "somewhat limited" ability to interact appropriately with fellow workers and supervisors.  (Tr. 220).

State agency physicians who reviewed the record stated that the GAF of 50 appeared to be based partly upon Mr. Neal's complaints of pain, and found his allegations only partly credible, in part because he denied taking Paxil due to the expense but recently spent money for a vasectomy reversal.  (Tr. 241, 279-81).  In any case, the hypothetical question was consistent with the specific limitations cited by the examining source.

Another psychological examination was conducted by Mr. Phil Pack in June, 2004. (Tr. 390-1).  Mr. Pack diagnosed a panic disorder, a depressive disorder, and a pain disorder "by history." (Tr. 395).  He opined that Mr. Neal would have a Class 2 impairment of activities of daily living, social functioning, concentration, and adaptation.  (Tr. 396).  Class 2 functioning is equivalent to a mild impairment "compatible with most useful functioning."  American Medical Association, Guides to the Evaluation of Permanent Impairment (Fifth Ed.), p. 363.  These conclusions are also compatible with the hypothetical restrictions.

Neal

Dr. Chaney, a treating source, included restrictions in his January, 2006 reports, including a "seriously limited but not precluded" ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration. (Tr. 407). However, there is an unexplained inconsistency between his diagnosis of "moderate" anxiety and depression and these restrictions, and, once again, the plaintiff does not raise this specific issue. While Dr. Chaney did prescribe medications for anxiety and depression (e.g., Tr. 302), his office notes contain no real objective findings. Therefore, Dr. Chaney's restrictions were not entitled to controlling weight.

The decision will be affirmed.

This the 14th day of May, 2007.



Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**